UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MARGO S. WEBSTER,                    )
                                     )
          Plaintiff,                 )
                                     )
     vs.                             )          Case No. 4:05CV01023 AGF
                                     )
CITY OF ST. LOUIS COLLECTOR          )
OF REVENUE,                          )
                                     )
          Defendant.                 )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's unopposed motion for summary judgment.[1] Plaintiff Margo Webster filed this action pro se under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, against her former employer, the City of St. Louis Collector of Revenue. In her second amended complaint, Plaintiff, who is African-American, claims that Defendant[2] terminated her employment, suspended her, harassed her, and retaliated against her based upon her race, sex, and "educational background." She alleges that she was discriminated and retaliated against because she is a "black woman with a Master's degree." For the reasons set forth below, Defendant's motion for summary judgment shall be granted.

---

[1]    The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

[2]    The Court construes the complaint to name her former employer as Defendant, rather than the individual who was the Collector of Revenue at all relevant times.

# BACKGROUND

The record establishes that Plaintiff was hired as a clerk in 1970 by the Collector of Revenue for the City of St. Louis. On June 6, 1998, Plaintiff was promoted to the position of supervisor, and on January 13, 2001, she was promoted to the position of manager. Plaintiff filed a complaint with the Equal Employment Opportunity Office (EEOC) on January 28, 2005, against Defendant, claiming discrimination, harassment and retaliation on the basis of race, gender, and "educational background." In narrative form, Plaintiff asserted that "[t]his whole thing began 1 week prior to November 4, 2002," when people in the office thought she said something about a co-worker. Plaintiff asserted that on November 12, 2003, she was assigned to the Processing Department for "the busy season" and was told that when that was over, she would be assigned to the Water Department. She further asserted that in May 2003, she was reassigned to the Water Department under the supervision of James Whitmore, and another person was named as the manager in Plaintiff's previous position. Plaintiff asserted that co-workers told her this was being done to her because she was the only black woman with a (Master's) degree and thus people were jealous of her. Plaintiff also asserted that co-workers in the Water Department were rude to her on several occasions, and she again asserted that this was because she was the only black woman with a degree.

After being issued a right to sue letter by the EEOC, Plaintiff filed this action on June 29, 2005, claiming that she was being harassed on the job because she was a black woman with a Master's degree. She alleged that co-workers spoke to her in a disrespectful manner, often using curse words, and that Whitmore, an African-American,

looked at her buttocks on several occasions and on one occasion yelled at her for leaving the room without permission. She also alleged that after she filed the EEOC complaint, Whitmore "consistently" called her into his office, yelled at her, and threatened to have her fired. Plaintiff listed approximately 20 unpleasant encounters she had had with co-workers and Whitmore from November 4, 2002 through June 28, 2005, including three times (December 2, 2004, June 20, 2005, and June 27, 2005) when Whitmore allegedly looked at her buttocks, and one (March 15, 2005) when Whitmore handed her a reprimand which he told her was based upon her behavior in the office. None of the incidents involved any sexually or racially offensive language.

Plaintiff asserted that based upon statements made to her by co-workers not involved in the alleged harassment, she believed that such harassment was directed at her because she was a black woman with a Master's degree. Plaintiff named a white female, a black male, and two white males, all of whom had Master's degrees but were not treated in the same rude manner as was Plaintiff.

On August 12, 2005, Plaintiff filed a First Amended Complaint, and on August 17, 2005, she filed a Second Amended Complaint. These pleadings added the following alleged actions, which Plaintiff claimed were retaliatory for her filing the EEOC charge and this action: On July 6, 2005, Whitmore yelled at Plaintiff for not being at her desk while she was on a scheduled break, had her escorted by guards out of the building, and placed her on suspension; and by letter dated August 1, 2005, Plaintiff was informed that she was terminated for poor work performance and insubordination.

In response to Defendant's interrogatory asking for a description of each act of harassment she was complaining about, Plaintiff attached the part of her Second Amended Complaint that listed the approximately 20 incidents of challenged conduct, plus the suspension and termination. In response to an interrogatory asking for the names of other employees whom she believed were discriminated against by Defendant based upon race, gender, and/or educational background, Plaintiff responded, "None." Defendant also submitted evidence that during the years 2002 through 2005, the office of the Collector of Revenue had 126 employees, of whom 50 were black, 94 were women, and 41 were black women.

Defendant argues that Plaintiff's allegations in her Second Amended Complaint, her answers to interrogatories, and the other evidence in the record establish that Defendant is entitled to summary judgment on all of Plaintiff's claims. Defendant argues that the alleged verbal confrontations, the reprimand, and Whitmore's looking at Plaintiff's buttocks on three occasions during an 18-month period did not constitute unlawful harassment under Title VII; that other than her suspension and termination, Plaintiff did not link any adverse employment action to protected activity on her part; and that Plaintiff's claim that her suspension and termination were discriminatory and/or retaliatory fails because Plaintiff did not amend her EEOC charge to include such claims and therefore did not exhaust administrative remedies as to them. As noted above, Plaintiff has not responded to the motion for summary judgment.[3]

---

[3]    The Court notes that by Order dated February 8, 2006, the Court ordered Plaintiff to file her long-overdue initial disclosures on or before February 17, 2006, and

## DISCUSSION

### Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the record.  Sallis v. Univ. of Minn., 408 F.3d 470, 475 (8th Cir. 2005); Hott v. Hennepin County, Minn., 260 F.3d 901, 904 (8th Cir. 2001).

The moving party bears the burden of showing the absence of a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  A "material" fact is one "that might affect the outcome of the suit under the governing law."  Id. at 248. When a motion for summary judgment is made and properly supported by evidence, the non-moving party may not rest on the allegations of her pleadings but must set forth specific facts, by affidavit or other evidence, showing that there is "a genuine issue for

---

cautioned Plaintiff that her failure to do so might result in dismissal of this case without prejudice.  On February 22, 2006, prior to filing the present motion for summary judgment, Defendant informed the Court that Plaintiff had not yet filed initial disclosures. Although the Court addresses the merits of the motion for summary judgment, the Court believes that dismissal without prejudice under Federal Rule of Civil Procedure 41(b) for failure to comply with this Court's Order is warranted here.  See, e.g., Townes v. May Dep't Stores, No. 03-3607, 2004 WL 906493 (April 29, 2004) (per curiam).

trial." Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S.574, 587 (1986).

Because discrimination cases often turn on inferences rather than direct evidence, summary judgment should be "cautiously granted" in such cases. Jacob-Mua v. Veneman, 289 F.3d 517, 520 (8th Cir. 2002). Furthermore, the Court is mindful that pro se pleadings must be construed "charitably." See, e.g., Shannon v. Ford Motor Co., 72 F.3d 678, 685 (8th Cir. 1996). Even though Defendant's motion for summary judgment stands unopposed, the Court must still determine whether Defendant is entitled to judgment as a matter of law on Plaintiff's claims.

## Framework for Claims of Disparate Treatment, Harassment, and Retaliation

Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of disparate treatment based on sex or race discrimination, a plaintiff must prove that: (1) she is a member of a protected class; (2) she was qualified to perform her duties; (3) she suffered an adverse employment action; and (4) circumstances give rise to an inference of discrimination, as similarly situated employees, who are not members of the protected group, were treated more favorably. Jacob-Mua, 289 F.3d at 521-22. Plaintiff has the burden of showing by "specific, tangible evidence" that employees who were allegedly treated more favorably

were similarly situated to her "in all relevant respects." Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000).

Harassment of an employee based on an enumerated factor violates Title VII when the harassment creates a work environment that "'is permeated with discriminatory intimidation, ridicule, and insult'" that is sufficiently severe or pervasive to alter the conditions of the victim's employment. Canady v. Wal-Mart Stores, Inc., 440 F.3d 1031, 1035 (8th Cir. 2006) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)); see also Bowen v. Mo. Dep't of Soc. Servs., 311 F.3d 878, 884 (8th Cir. 2002) (noting that a Title VII plaintiff "need only establish discriminatory conduct which is either pervasive or severe").

To prevail on a hostile work environment claim, a plaintiff must establish (1) that she belongs to a protected group; (2) that she was subject to unwelcome harassment; (3) there exists a causal nexus between the harassment and her protected group status; (4) that the harassment affected a term, condition, or privilege of employment; and, where co-worker or supervisory harassment is involved and the harassment is from non-supervisory employees, (5) that her employer knew or should have known of the harassment and failed to take proper action. Williams v. ConAgra Poultry Co., 378 F.3d 790, 794-95 (8th Cir. 2004); Palesch v. Mo. Comm'n on Human Rights, 233 F.3d 560, 566 & n.5 (8th Cir. 2000).

To determine whether the alleged harassment affected a term, condition, or privilege of employment, the Court considers all the circumstances, including the frequency of the behavior, its severity, whether physical threats were involved, and

whether the behavior unreasonably interfered with the plaintiff's work performance. Cottrill v. MFA, Inc., 443 F.3d 629, 636 (8th Cir. 2006).  In addition, the "'objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'"  Id. (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998)).

To establish a prima facie case of retaliation, an employee must show that (1) she engaged in statutorily protected activity; (2) the employer took an adverse action against her; and (3) a connection exists between the two occurrences.  Tademe v. St. Cloud State Univ., 328 F.3d 982, 991-92 (8th Cir. 2003).  Under 42 U.S.C. § 2000e-3(a), protected activity is comprised of either (1) opposition to employment practices prohibited under Title VII, or (2) filing a charge, testifying, assisting or participating in an investigation, proceeding, or hearing convened according to Title VII.

**Exhaustion Requirement**

Before seeking judicial relief for a violation of Title VII, a plaintiff must exhaust administrative remedies by filing a timely charge of discrimination with the EEOC, and the plaintiff is then limited in her civil action to acts of discrimination that are within the scope of the administrative charge.  Cottrill, 443 F.3d at 634; Stuart v. Gen. Motors Corp., 217 F.3d 621, 630 (8th Cir. 2000).  To determine whether a discriminatory act falls within the scope of an administrative charge, the charge must be construed liberally and a plaintiff may seek judicial relief for any act of discrimination "that grows out of or is like or reasonably related to the substance of the allegations in the administrative

charge." Stuart, 217 F.3d at 631; see also Wallace v. DTG Operations, 442 F.3d 1112, 1123-24 (8th Cir. 2006).

## Analysis

Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that she has failed to meet her burden of proving that an issue of material fact exists as to any of her claims. The Court agrees with Defendant that Plaintiff has failed to exhaust her administrative remedies with respect to her claim that her suspension and termination were retaliatory, in violation of Title VII. In Wedow v. City of Kansas City, Mo., 442 F.3d 661 (8th Cir. 2006), the Eighth Circuit reaffirmed its position that "retaliation claims are not reasonably related to underlying discrimination claims," such that a retaliatory termination that occurred subsequent to a timely filed EEOC charge of discrimination is not covered by the EEOC charge, unless that charge is amended to include the discrete subsequent act. Id. at 672-73; see also Shelton v. Boeing Co., 399 F.3d 909, 913 (8th Cir. 2005) (holding that filing of discrimination charge with EEOC regarding plaintiff's layoff was insufficient to meet exhaustion requirement regarding employer's subsequent failure to rehire plaintiff); Boge v. Ringland-Johnson-Crowley Co., 976 F.2d 448, 451 (8th Cir. 1992) (affirming district court's dismissal of plaintiff's claim arising out of his termination, where the administrative charge only alleged discrimination in a previous termination).

Other than the alleged harassment, Plaintiff has not alleged a pre-suspension adverse employment action. She does not allege that her salary or benefits were reduced, or that her new work assignments were any less advantageous than her previous one. "An

adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. Mere inconvenience without any decrease in title, salary, or benefits or that results only in minor changes in working conditions does not meet this standard." Wedow, 442 F.3d at 671 (citation omitted).

Nor has Plaintiff established a question of material fact as to whether the alleged pre-suspension conduct was so severe or pervasive as to constitute unlawful racial or sexual harassment under Title VII. Even if Plaintiff was treated with disdain due to being a black woman with a degree, the treatment she alleged was not physically threatening nor particularly severe. It is not Title VII's function to remedy unpleasant and rude behavior. Nitsche V. CEO of Osage Valley Elec. Co-op., 446 F.3d 841, 846 (8th Cir. 2006); Willis v. Henderson, 262 F.3d 801, 809-10 (8th Cir. 2001). As noted above, no explicitly offensive racial or sexual language was alleged.

The Court further concludes that Whitmore's alleged sexually objectionable behavior of looking at Plaintiff's buttocks on three occasions does not rise to the level of illegal sexual harassment. See LeGrand v. Area Res. for Cmty. & Human Servs., 394 F.3d 1098, 1100-03 (8th Cir. 2005) (holding that unwelcome sexual advances on three separate occasions over a nine-month period, including asking plaintiff to watch pornographic movies with him, hugging and kissing plaintiff, and grabbing plaintiff's buttocks and thigh, did not create actionable hostile work environment, although the conduct made plaintiff uncomfortable and was "boorish, chauvinistic, and decidedly immature").

## <u>CONCLUSION</u>

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment is

**GRANTED**.  [Doc. #25]

An appropriate Judgment shall accompany this Memorandum and Order.


_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of July, 2006.